IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Robert Lee Clayton, Jr.,              )    Case No. 8:12-cv-00878-RBH-JDA
                                      )
        Petitioner,                   )
                                      )
        v.                            )    **REPORT AND RECOMMENDATION**
                                      )    **OF MAGISTRATE JUDGE**
Mr. Donald Bryant,                    )
                                      )
        Respondent.                   )
_____)

This matter is before the Court on Respondent's motion for summary judgment.
[Doc. 42.] Petitioner is a state prisoner who seeks relief under 28 U.S.C. § 2254. Pursuant
to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C.,
this petition for relief was referred to the undersigned magistrate judge.

**PROCEDURAL HISTORY**

Petitioner, proceeding pro se, filed this Petition for writ of habeas corpus on March
26, 2012.[1] [Doc. 1.] Subsequently, Petitioner filed two amendments to the Petition, adding
grounds for relief. [Docs. 25, 39.] On August 24, 2012, Respondent filed a motion for
summary judgment and a return and memorandum. [Docs. 41, 42.] On August 27, 2012,
the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975),
advising Petitioner of the summary judgment procedure and of the possible consequences
if he failed to adequately respond to the motion. [Doc. 43.] On September 21, 2012,
Petitioner filed a motion for discovery and expansion of the record pursuant to Rules 6 and

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for
forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing
date in the light most favorable to Petitioner, this action was filed on March 26, 2012. [Doc. 1-1 (envelope
postmarked March 26, 2012).]

7 of the Rules Governing § 2254 Cases.  [Doc. 45.]  On October 1, 2012, Petitioner filed

a motion for extension of time to respond to the motion for summary judgment.  [Doc. 48.]

On October 4, 2012, the Court filed an Order to show cause why the Petition should

not be dismissed as untimely.  [Doc. 50.]  The Court also denied Petitioner's motions for

discovery and an extension of time.  [*Id.*]  Petitioner filed a response to the Order to show

cause on November 8, 2012.  [Doc. 53.]

Having carefully considered the parties' submissions and the record in this case, the

Court recommends that Respondent's motion for summary judgment be granted and the

Petition be denied.

## BACKGROUND

Petitioner is presently confined at the Ridgeland Correctional Institution of the South

Carolina Department of Corrections pursuant to orders of commitment of the Clarendon

County Clerk of Court.[2]  [Doc. 1 at 1; Doc. 36 (notice of change of address to Ridgeland

Correctional Institution).]  In May 2002, Petitioner was indicted in 2002-GS-14-123 for one

count of armed robbery and one count of possession of a weapon during a violent crime.

[App. 350–51[3]; *see also* Doc. 41-35 at 4–5 (duplicate).]  Petitioner was also indicted in

2002-GS-14-124 for one count of attempted first degree burglary, one count of possession

---

[2] On July 23, 2012, Petitioner filed a notice of change of address updating his address to Ridgeland Correctional Institution.  [Doc. 36.]  A prisoner's immediate custodian—the warden of the facility where the prisoner is being held—is the proper respondent in a habeas corpus action because the immediate custodian has the power to produce the prisoner's body before the habeas court.  *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).  If a prisoner properly files a habeas petition naming the prison warden as the respondent and is relocated to another prison before the court decides whether or not to grant the petition, the court "retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."  *Id.* at 441 (discussing *Ex parte Endo*, 323 U.S. 283 (1944)).  Thus, this Court retains jurisdiction over the Petition following Petitioner's transfer to Ridgeland Correctional Institution.

[3] The Appendix can be found at Docket Entry Numbers 41-1 through 41-4, and the Supplemental Appendix can be found at Docket Entry Number 41-5.

of a weapon during a violent crime, and one count of possession of burglary tools.  [App. 348–49; *see also* Doc. 41-35 at 1–2 (duplicate).]  On May 20, 2002, represented by Harry Devoe ("Devoe"), Petitioner proceeded to trial on Indictment No. 2002-GS-14-123 [App. 1–134], although he was not present [App. 5 (noting Petitioner had been present prior to jury selection but was not present when the case was called), 79 (noting Petitioner still was not present at the close of the State's case)].  Petitioner was found guilty of both charges. [App. 122.]  On August 26, 2002, Petitioner was sentenced to fifteen years imprisonment for the armed robbery conviction and five years imprisonment for the possession of a weapon conviction, with the sentences to run concurrently.[4]  [App. 138.]

On August 29, 2002, Petitioner appeared before the trial court on Indictment No. 2002-GS-14-124.  [App. 141–48.]  The State reduced the attempted first degree burglary charge to attempted second degree burglary and dropped the remaining charges of possession of a weapon during a violent crime and possession of burglary tools.  [App. 141, 143.]  Petitioner then pled guilty to attempted second degree burglary and was sentenced to ten years imprisonment on the conviction, to run concurrently with the sentences he received for his armed robbery and possession of a weapon convictions. [App. 141–48.]

---

[4] The Court notes that, while not relevant to this Report and Recommendation, several pages are missing from the transcript of the August 26, 2002 proceeding.  [*See* App. 139 (transcript page 5), App. 140 (transcript page 8), App. 141 (transcript page 10).]

**Direct Appeal**

Petitioner timely filed a notice of appeal.  On March 17, 2003, Wanda H. Haile of the South Carolina Office of Appellate Defense filed an *Anders* brief[5] on Petitioner's behalf, as well as a petition to be relieved as counsel.  [Doc. 41-6.]  On May 20, 2003, Petitioner filed a pro se response brief.  [Doc. 41-7.]  On October 21, 2003, the South Carolina Court of Appeals issued a per curiam opinion dismissing the appeal.  [Doc. 41-8.]  Petitioner filed a motion for rehearing [Doc. 41-9], which the Court of Appeals denied on December 19, 2003 [Doc. 41-10].  Remittitur was issued on January 28, 2004.  [Doc. 41-11.]

**PCR Proceedings**

*First PCR Application*

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on February 23, 2004.  [App. 149–56.]  On June 15, 2005, a hearing was held on the application, and Petitioner was represented by Shaun Kent ("Kent").  [App. 163–243.]  On October 31, 2005, a subsequent hearing was held to present testimony with respect to an alleged alibi witness.  [App. 246–79.]  On March 30, 2006, the PCR court issued an order denying and dismissing the application with prejudice.  [App. 280–89.]

*Second PCR Application*

On February 27, 2007, Petitioner filed a second pro se PCR application.  [App. 290–97.]  As his ground for relief, Petitioner alleged ineffective assistance of PCR counsel for PCR counsel's failure to advise and file an appeal.  [App. 292.]  On March 17, 2008, Petitioner filed another PCR application, alleging the trial court lacked subject matter

---

[5]A brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim.

4

jurisdiction to accept his guilty plea. [Supp. App. 7–11.] The State moved to merge these two applications [Doc. 41-12], and on August 25, 2008, the PCR court issued an order of merger [Supp. App. 4–5; *see also* Doc. 41-13 (duplicate)].

A hearing was held on this PCR application on September 16, 2008, and Petitioner was represented at the hearing by Scott Robinson. [App. 303–41.] On November 6, 2008, the PCR court issued an order denying and dismissing the application with prejudice but finding Petitioner's first PCR counsel failed to properly advise him of his appellate rights and directing his current PCR counsel to secure appropriate review of his first PCR application. [App. 342–47.] A notice of appeal was timely filed and served. [Doc. 41-14.]

On November 5, 2009, Elizabeth A. Franklin-Best of the South Carolina Commission on Indigent Defense filed on Petitioner's behalf in the South Carolina Supreme Court (1) a petition for writ of certiorari pursuant to *Austin v. State*[6] and (2) a petition for writ of certiorari seeking review of the PCR court's decision with respect to the first PCR

---

[6]In other words, Petitioner requested appellate review of the PCR court's decision pursuant to *Austin v. State*, 409 S.E.2d 395 (S.C. 1991). As the South Carolina Supreme Court has explained,

> This Court has allowed successive PCR applications where the applicant has been denied complete access to the appellate process. Under the PCR rules, an applicant is entitled to a full adjudication on the merits of the original petition, or "one bite at the apple." This "bite" includes an applicant's right to appeal the denial of a PCR application, and the right to assistance of counsel in that appeal.
>
> An *Austin* appeal is used when an applicant is prevented from seeking appellate review of a denial of his or her PCR application, such as when an attorney fails to seek timely review.
>
> ***
>
> *Austin* appeals are considered "belated appeals" and are used to rectify unjust procedural defects, such as when an attorney does not file a timely appeal.

*Odom v. State*, 523 S.E.2d 753, 755–56, 757 (S.C. 1999) (citations and footnote omitted).

application.  [Docs. 41-15, 41-16.]  On June 22, 2011, the South Carolina Supreme Court granted the petition for writ of certiorari pursuant to *Austin* and considered whether to grant the petition for a writ of certiorari from the denial of the first PCR application.  [Doc. 41-19.]  Upon review, the Supreme Court denied the petition for writ of certiorari from the denial of Petitioner's first PCR application.  [*Id.*]  Remittitur was issued on July 8, 2011.  [Doc. 41-20.]

### Third PCR Application

On June 9, 2009, Petitioner filed a third pro se PCR application.[7]  [Doc. 41-21.]  On December 3, 2009, the PCR court issued a conditional order of dismissal, allowing twenty days for Petitioner to respond and show why the application should not be dismissed as successive and untimely.  [Doc. 41-26.]  Petitioner requested a hearing, filed a response to the conditional order, and moved to amend his application.  [Docs. 41-28, 41-29, 41-30.]  On March 31, 2010, the PCR court issued a final order, denying and dismissing Petitioner's application with prejudice as successive and untimely.  [Doc. 41-31.]  Petitioner appealed [Doc. 41-32], but on May 20, 2010, the South Carolina Supreme Court dismissed his appeal for his failure to show the PCR court's determination was arguably improper [Doc. 41-33].  Remittitur was issued on June 25, 2010.  [Doc. 41-34.]

---

[7] On August 17, 2009, the PCR court issued a conditional order of dismissal, finding the application successive and untimely and allowing Petitioner twenty days to show why the PCR court's order should not become final.  [Doc. 41-23.]  After Petitioner moved for the PCR judge to recuse himself because the judge had prosecuted Petitioner's case [Doc. 41-24], the PCR court vacated the conditional order of dismissal and the application was reassigned to another judge [Doc. 41-25].

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on March 26, 2012 pursuant to 28 U.S.C. § 2254.  [Doc. 1.]  Petitioner has also filed two amendments to his Petition. [Docs. 25, 39.]  Petitioner asserts eight grounds for relief, quoted substantially verbatim and renumbered in order of presentation to the Court:

| | |
|---|---|
| **Ground One:** | Ineffective Assistance of Counsel |
| *Supporting Facts:* | Trial Counsel fail to file notice of alibi, and that applicant had intentions on introducing an alibi in his de[]fense. Applicant had put Counsel on notice of this alibi 3 months before trial.  Applicant also reminded Counsel the week before trial.  Counsel had 10 days before trial to enter the notice.  He fail to do so.  As a result Applicant was denied the right to obtain witnesses in his favor. |
| **Ground Two:** | Trial Counsel fail to challenge the Identification process of the State's Case. |
| *Supporting Facts:* | The Applicant was pick out of a photo line up with 6 mugshots of different jail inmates.  Counsel never challenge the suggestiveness or the failure of the State to produce this line up until the day of trial.  This was the only evidence involving the Applicant in this Crime. |
| **Ground Three:** | Trial Counsel fail to object to the improper comments made by the Prosecution. |
| *Supporting Facts*: | The Solicitor made inappro[priate] comments when he stated and used religion and the swearing on the Bible to bolster the credibility of the witness. Counsel also fail to object to the Solicitor improper comments when he made [h]is own opinion on how good the Police did on the Identification process. |
| **Ground Four**: | Subject Matter Jurisdiction. |
| *Supporting Facts*: | The Charge Attempted Burglary 1st Degree is not a Crime define in the Code of Laws in South Carolina. |

7

Also that my charge that I pleaded guilty to was not a lesser included offense.  The lesser charge is not included in the greater charge, so the Court never obtain Competent Juri[s]diction.

**Ground Five**:    Trial counsel was Ineffective for failing to Request a <u>Motion for Continuance</u>.

*Supporting Facts*:    Trial counsel testified that he has problems with obtaining the Motion of discovery, and that he wasn't aware of going to Trial on the day his client went to trial, and admitted that from past and previous ex[]perience, that for Clarendon County "the trial came relatively quick."  Trial counsel realizing he did not rec[ei]ve all of the discovery, the 10 day notice for the Alibi wasn't produce, and realizing that this case came up for trial 9 days after the presentment of indictment, with no time to prepare a defense, he did request for a continuance even when petitioner ask him to.

**Ground Six**:    Trial counsel failed to advise his client that the State could not prove all the elements of Burglary 1st Degree under S.C. Code of laws, and had he advise petitioner he would not have pled, but went to trial.

**Ground Seven**:    Trial court erred in allowing the Ba[i]liff to testify in Petitioner's case, when the ba[i]liff had improper Jury contact with the ba[i]liff who also testified at Trial.

**Ground Eight**:    Trial counsel was ineffective when he did not Pretrial investigation that includes an independent examination of the facts and circumstances that led to the arrest of Petitioner.

*Supporting Facts*:    Evidence was requested for in counsel's Rule 5 motion. The prosecution never gave Trial Counsel any discovery in this case but an indictment on May 13, 2002.  Trial Counsel then filed a Motion of discovery on May 14, 2002.  Six days later Petitioner was taken to trial.  Trial counsel did not investigate the facts that lead up to the arrest and how the crime was committed.  And as a result Trial Counsel was not aware of the misleading testimony of the sole witness to the Jury, which constitutes as perjury in South Carolina.  Without

> Counsel's pretrial investigation, counsel could not fully use the mechanisms of crossexamination or impeachment of this adverse witness at trial.

[Docs. 1, 25, 39.]

As stated, Respondent filed a motion for summary judgment on August 24, 2012. [Doc. 42.] Upon review of the record of the proceedings in state court, the Court found the Petition was likely time-barred. On October 4, 2012, the Court issued an Order to show cause, allowing Petitioner to address whether the Petition is time-barred and Respondent to reply to any arguments raised by Petitioner. [Doc. 50.] On November 8, 2012, Petitioner submitted a response to the Order to show cause, arguing equitable tolling should apply to toll the limitations period because Kent, Petitioner's counsel with respect to his first PCR application, failed to advise Petitioner of his right to appeal and failed to perfect an appeal even though Petitioner requested it. [Doc. 53.] Accordingly, Respondent's motion for summary judgment is ripe for review.

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court

9

can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must

10

demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

11

**Habeas Corpus**

**_Generally_**

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. _Lindh v. Murphy_, 521 U.S. 320 (1997); _Breard v. Pruett_, 134 F.3d 615 (4th Cir. 1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  _Williams v. Taylor_, 529 U.S. 362, 410 (2000).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  _Harrington v. Richter_, 131 S.Ct. 770, 786 (2011).  Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### *Exhaustion*

Section 2254 contains the requirement of exhausting state court remedies and provides as follows:

> (b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)     (i) there is an absence of available State corrective process; or
> >
> >        (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the

applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653

14

S.E.2d 266 (S.C. 2007).[8]  Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45(A).

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168, 1173 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim.  *See State v. McKennedy*, 559 S.E.2d 850, 854 (S.C. 2002) (reiterating that discretionary review by the South Carolina Supreme Court is not required to exhaust available state court remedies: "[South Carolina] has identified the petition for discretionary review to [the South Carolina Supreme Court] in criminal and post-conviction cases as *outside* South Carolina's standard review process. In [the South Carolina Supreme Court's] 1990 order, th[e] Court stated that petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required

---

[8]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

in order to exhaust all available state remedies." (emphasis in original) (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990))*.*

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts.  *See id.*  Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.  *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time.  *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991).  Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court.  S.C. App. Ct. R. 203(d)(3) & 243.  If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also*

16

*Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995).  As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim.  *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)).  When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim.  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim.  *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court.  *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991).  Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim.  *Wainwright*, 433 U.S. at 87.  In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply.  *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v.*

17

*Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Murray*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual

18

innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To pass through this actual innocence standard, the petitioner's case must be truly extraordinary. *Murray*, 477 U.S. at 496.

### *Statute of Limitations*

Under the AEDPA, petitioners have one year to file a petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The limitations period runs from the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* § 2244(d)(1)(A)–(D). However, the statute tolls the limitations period during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2).

An application for post-conviction or other collateral review is not properly filed if the application is untimely under state law. *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002)

19

(alteration in original)).  In *Pace*, the United States Supreme Court held that time limits on filing applications for post-conviction or collateral review are filing conditions, no matter the form of the time limit.  *Id.* at 417.  Therefore, if an application for post-conviction or collateral review is barred by a state statute of limitations, statutory tolling under § 2244(d)(2) does not apply because the application was not properly filed.

The Supreme Court recently recognized that the limitations period may be equitably tolled if the petitioner shows (1) he has been diligently pursuing his rights and (2) some extraordinary circumstance stood in his way, preventing him from timely filing his habeas petition.  *Holland v. Florida*, --- U.S. ---,130 S. Ct. 2549, 2562 (2010) (quoting *Pace*, 544 U.S. at 418).  Therefore, "specific circumstances . . . could warrant special treatment in an appropriate case" such that the limitations period is not strictly applied.  *Id.* at 2563.

## DISCUSSION

As addressed in the Court's Order to show cause, Respondent argues the Petition is time-barred [Doc. 41 at 37–42], and the Court agrees [*see* Doc. 50].  In his response to the Order to show cause, Petitioner does not challenge the conclusion that the Petition is untimely but argues he is entitled to equitable tolling because of the failings of his first PCR counsel.  [Doc. 53.]  Upon consideration of Petitioner's arguments and applicable law, the Court concludes Petitioner is not entitled to equitable tolling and recommends that the Petition be denied as untimely.

### *Expiration of the Limitations Period*

The South Carolina Court of Appeals dismissed Petitioner's direct appeal on October 21, 2003 [Doc. 41-8] and denied Petitioner's motion for rehearing on December

19, 2003 [Doc. 41-10]. Consequently, Petitioner had one year from January 20, 2004—when time expired for Petitioner to seek further direct review[9]—to file a federal habeas petition.  28 U.S.C. § 2244(d)(1); *Gonzalez v. Thaler*, --- U.S. ---, 132 S. Ct. 641, 653–54 (2012) (holding that a judgment becomes final for purposes of § 2244(d)(1) "when the time for pursuing direct review in [the United States Supreme] Court, or in state court, expires"); *Holland*, 130 S. Ct. at 2558; S.C. App. Ct. R. 242(c) ("A decision of the Court of Appeals is not final for the purpose of review by the Supreme Court until the petition for rehearing or reinstatement has been acted on by the Court of Appeals. A petition for writ of certiorari shall be served on opposing counsel and filed with proof of service with the Clerk of the Court of Appeals and the Clerk of the Supreme Court within thirty (30) days after the petition for rehearing or reinstatement is finally decided by the Court of Appeals.").

Petitioner filed his first application for state post-conviction review on February 23, 2004 [App. 149–56], such that 34 days of the one-year limitations period had expired before Petitioner filed his PCR application.  The one-year period in which to file a federal habeas petition is tolled during the pendency of a properly filed PCR application, 28 U.S.C. § 2244(d)(2), and thus, the statute of limitations was tolled during the periods Petitioner's first and second PCR applications were pending—from February 23, 2004 until May 1, 2006, when the time expired for seeking review of the denial of his first application,[10] *see*

---

[9] Pursuant to Rule 6(a)(1)(C) of the Federal Rules of Civil Procedure, when calculating time, the last day of the period must be included, "but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."  Because the 30-day period for Petitioner to file a petition for writ of certiorari in the South Carolina Supreme Court expired on Sunday, January 18, 2004 and Monday, January 19, 2004 was a state holiday, the judgment in Petitioner's case became final on Tuesday, January 20, 2004.

[10] Petitioner had 30 days to appeal the denial of his PCR application, which began to run on March 30, 2006.  [*See* App. 280, 289 (time-stamp dated March 27, 2006 and judge's signature dated March 30, 2006).]  Because the 30-day period expired on Saturday, April 29, 2006, the AEDPA limitations period began

S.C. App. Ct. R. 243(d), and from February 27, 2007, when the second application was

filed [App. 290–97], until July 8, 2011, when the South Carolina Supreme Court issued

remittitur in the appeal of Petitioner's second PCR application [Doc. 41-20].[11]   Three

_____

to run again on Monday, May 1, 2006.

   [11] The period between Petitioner's first and second PCR applications is not tolled because, pursuant to § 2244(d)(2), only the time when a properly filed PCR application is *pending* is tolled.  Another court in this district has concluded there was a strong argument that, under § 2244(d)(2), petitioners would not be entitled to toll the period between a PCR application and a belated appeal of the PCR application.  *Frederick v. McCabe*, No. 9:11–211–RBH–BM, 2011 WL 6026659, at *3 n.8 (D.S.C. Sept. 29, 2011), *report and recommendation adopted by* 2011 WL 6026611 (D.S.C. Dec. 5, 2011).  In *Frederick*, the petitioner did not timely perfect an appeal of his first PCR application but, through a second PCR, was granted an *Austin* review of the dismissal of his first PCR.  *Id.* at *1–2.  The court found the petition was untimely because the statute of limitations expired before the petitioner filed his first PCR application, but the court also discussed whether the period between the petitioner's two PCR applications could be tolled:

> In *Jimenez v. Quarterman*, 555 U.S. 113, 129 S. Ct. 681, 683–687, 172 L. Ed. 2d 475 (2009), the Supreme Court held that when a state court grants a criminal defendant the right to file an out-of-time *direct appeal* during state collateral review, before the defendant has first sought federal habeas relief, the date of finality of the conviction and the commencement of the limitations period is the conclusion of the out-of-time appeal, or the expiration of time for seeking review of that appeal.  However, a subsequent motion for a belated appeal in a *state PCR action* does not retroactively toll the statute back to the filing date of the original []PCR.  *See . . . Melancon v. Kaylo*, 259 F.3d 401, 407 (5th Cir. 2001) [holding that after the appeal period has lapsed, an application for further appellate review ceases to be "pending" for purposes of calculating federal habeas corpus tolling provision]; *Gibson v. Klinger*, 232 F.3d 799, 804–808 (10th Cir. 2000) [concluding that a "state court's grant of leave to appeal out of time cannot erase the time period during which nothing was pending before a state court]; *Fernandez v. Sternes*, 227 F.3d 977, 981 (7th Cir. 2000) [holding that while a state process may be reviewed after the time to seek further review has expired, "the prospect of revival does not make a case 'pending' in the interim."]; *Small v. Norris*, No. 08-273, 2009 WL 1529463 at *2 (E.D. Ark. June 1, 2009) [Time period between the expiration of time to file an appeal and the filing of a motion for a belated appeal is not tolled under § 2244].  Accordingly, there is a strong argument that Petitioner is not entitled to toll the federal habeas petition during the time period in which he had no petition pending after the dismissal of his first []PCR.

*Id.* at *3 n.8; *see also Israel v. McCall*, No. 3:11-02999-JMC-JRM, 2012 WL 3877665, at *4 (D.S.C. Aug. 1, 2012) (collecting cases holding "that the statute of limitations is not tolled after an initial PCR is concluded and the filing of an *Austin* PCR because there is no collateral proceeding pending during that time" and finding in the case before the court that the AEDPA limitations period was untolled between the issuance of remittitur with respect to the petitioner's first PCR application and the filing of a second PCR application raising an *Austin* claim), *report and recommendation adopted by* 2012 WL 3877669 (D.S.C. Sept. 6, 2012).  Thus, the Court concludes Petitioner is not entitled to tolling of the period between his first and second PCR applications pursuant to § 2244(d)(2).

hundred days of untolled time elapsed between the two PCR applications such that a total

of 334 days had elapsed when the AEDPA limitations period began to run again on July

8, 2011.  Therefore, the limitations period expired 31 days later on August 8, 2011.  As a

result, the Petition—filed on March 26, 2012, more than seven months after the expiration

of the limitations period—is time-barred.

### Equitable Tolling

Petitioner argues the time between the denial of his first PCR application and the

filing of his second PCR application should be equitably tolled.  [Doc. 53 at 1.]  Petitioner

contends his first PCR counsel, Kent, failed to inform Petitioner of his right to appeal and

that Kent failed to file an appeal even though Petitioner requested Kent to do so, which

constitutes more than a "garden variety" case of excusable attorney neglect.  [*Id.* at 3–6.]

Petitioner also argues Kent's conduct was external to Petitioner's conduct and beyond

Petitioner's control and that to hold Kent's "deliberate disregard of a prof[]essional duty"

against Petitioner would be a gross injustice.  [*Id.* at 7–12.]  Finally, Petitioner contends the

following actions, quoted substantially verbatim, demonstrate he exercised reasonable

diligence during the limitations period:

---

Further, the PCR court determined Petitioner's third PCR application was successive and untimely [Doc. 41-31], and the South Carolina Supreme Court found Petitioner had failed to demonstrate an arguable basis for departing from the PCR court's conclusion [Doc. 41-33].  Because Petitioner's third PCR application was determined to be untimely, it was not properly filed, *Pace*, 544 U.S. at 414 (holding an application for post-conviction relief is not properly filed if the application is untimely under state law), and therefore, it did not additionally toll the AEDPA limitations period, 28 U.S.C. § 2244(d)(2) (stating the limitations period is tolled during the pendency of a *properly filed* application for state post-conviction review).  Moreover, Petitioner's third PCR application was filed and concluded during the time his second PCR application was pending [*see* Doc. 41-21 (third application filed June 9, 2009); Doc. 41-34 (remittitur issued June 25, 2010)], and the Court has concluded the time the second PCR application was pending should be tolled.  Therefore, even if the time the third application was pending could be tolled, it would not toll any time left untolled, and the Petition would still be untimely.

> (1) Letter to PCR counsel requesting 59(e) and other matters dated March 15, 2006.  (2) Letter from Supreme Court reporting PCR conduct.  Dated June 22, 2006.  (3) Filing compl[ai]nt on PCR counsel to S.C. Bar.  date June 26, 2006.  (4) Wrote Supreme Court again about co[u]nsel[']s conduct.  Date Aug 10, 2006.  (5) Wrote to the PCR Judge seeking information.  dated August 25, 2006.  His response was sent with an ex[h]ibit to the S.C. Bar.  Wrote S.C. Supreme Court back when counsel told me it may be to[o] late to file an appeal, their response date January 5, 2007.

[*Id.* at 13.]  The Court concludes Petition is not entitled to equitable tolling because he has failed to show he undertook reasonable diligence in pursuing his right to file a federal habeas petition.

As the United States Supreme Court has recognized,

> Federal courts have typically extended equitable relief only sparingly.  We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.  We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151, 104 S. Ct. 1723, 1725, 80 L. Ed. 2d 196 (1984).

*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (footnotes omitted).  The United States Court of Appeals for the Fourth Circuit has underscored the very limited circumstances in cases subject to the AEDPA where equitable tolling will be permitted, holding a habeas petitioner "is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time."  *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en

24

banc).  Thus, rarely will circumstances warrant equitable tolling of the AEDPA limitations period:

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).[12]  The Supreme Court has suggested that equitable tolling is justified to relieve the operation of a limitations bar due to egregious unprofessional attorney misconduct, such as abandoning the client; a last minute change in representation beyond the client's control that prejudiced the client; failing to conduct essential services of representation like communicating with the client and performing basic legal research; and denying the client access to files and misleading the client.  *Holland*, 130 S. Ct. at 2564 (citations omitted).  Further, as previously stated, the Supreme Court has held that in addition to demonstrating extraordinary circumstances

---

[12] Other courts of appeals have similarly expressed that equitable tolling of the AEDPA statute of limitations is to be employed sparingly.  *See, e.g.*, *Merritt v. Blaine*, 326 F.3d 157, 169 (3d Cir. 2003) (applying the general rule that "'attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the "extraordinary" circumstances required for equitable tolling'" (citation omitted)); *Beery v. Ault*, 312 F.3d 948, 951 (8th Cir. 2002) ("Ineffective assistance of counsel generally does not warrant equitable tolling"); *Fierro v. Cockrell*, 294 F.3d 674, 683 (5th Cir. 2002) ( "[C]ounsel's erroneous interpretation of the statute of limitations provision cannot, by itself, excuse the failure to file [the petitioner's] habeas petition in the district court within the one-year limitations period"); *Sandvik v. United States*, 177 F.3d 1269, 1272 (11th Cir. 1999) (refusing to apply equitable tolling where late filing was caused by attorney's use of ordinary mail to send petition from Atlanta to Miami less than a week before it was due); *see also Rouse*, 339 F.3d at 246 ("Principles of equitable tolling do not extend to garden variety claims of excusable neglect" (citation omitted)).

prevented the petitioner from timely filing, the petitioner must demonstrate he has been diligently pursuing his rights.  *Id.* at 2562.

Here, while the Court certainly does not condone Kent's conduct toward Petitioner, the Court cannot find that Kent's conduct made it impossible for Petitioner to timely file the Petition.  *See Harris*, 209 F.3d at 330 (explaining that "the doctrine [of equitable tolling] has been applied in 'two generally distinct kinds of situations . . . [including when] extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time'" (quoting *Alvarez-Machain v. United States*, 107 F.3d 696, 700 (9th Cir. 1996))).  As stated, 31 days of the AEDPA limitations period remained after the South Carolina Supreme Court issued remittitur following Petitioner's belated appeal of his first PCR.  However, Petitioner failed to file the Petition within this time, and he has failed to explain how Kent's conduct made it impossible for Petitioner to file the Petition within the remaining time.

Further, while Petitioner may have diligently pursued his right to appeal the denial of his first PCR application, Petitioner has failed to demonstrate he was diligently pursuing his right to file a federal habeas petition.  As stated, on July 8, 2011, the South Carolina Supreme Court issued remittitur following the belated appeal of Petitioner's first PCR, but Petitioner did not file the Petition until March 26, 2012, 262 days after the Supreme Court issued remittitur.  Although Petitioner argues only that the Petition is timely if the Court applies equitable tolling,[13] Petitioner has failed to offer an explanation as to why he waited

---

[13] That is, Petitioner has acknowledged that the Court finds the Petition is untimely and has recognized that he must demonstrate that (1) extraordinary circumstances prevented him from timely filing the Petition and (2) he was diligently pursuing his rights.  [Doc. 53 at 2–3.]

more than eight months before filing the Petition.[14]  *See Jenerette v. Padula*, No. 9:10-886-RMG-BM, 2011 WL 901011, at *4 (D.S.C. Feb. 24, 2011) (concluding the petitioner had failed to show he acted with reasonable diligence in pursuing his claims in part because he let 294 days pass between the conclusion of state collateral review and filing his federal habeas petition), *report and recommendation adopted by* 2011 WL 899654 (D.S.C. Mar. 15, 2011).  For these reasons, the Court concludes Petitioner is not entitled to equitable tolling.

## CONCLUSION

Wherefore, based upon the foregoing, the Court recommends Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

December 3, 2012
Greenville, South Carolina

---

[14] The Court notes Petitioner does explain that he was transferred to a county jail on May 19, 2011 through a SCDC inmate work program.  [Doc. 53 at 12–13.]  He states he found out over the phone that the South Carolina Supreme Court denied his petition for writ of certiorari, but he does not state when he found out this information.  [*Id.* at 13; *see also* Doc. 53-1 at 13 (letter from South Carolina Commission on Indigent Defense dated May 17, 2012—after Petitioner filed the Petition—informing Petitioner of mail returned to its office in June 2011 and of the statute of limitations for filing federal habeas petitions).]  Without more, the Court cannot conclude Petitioner was diligently pursuing his rights.